**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**KENNETH JASON BROOKINS** **PLAINTIFF**

**v.** **CAUSE NO. 3:25-CV-205-RPC-JMV**

**OXFORD SCHOOL DISTRICT, *et al.*** **DEFENDANTS**

# ORDER

This cause comes before the court on the defendants' appeal of a Report and Recommendation issued by Magistrate Judge Virden in the above-entitled action. This court, having considered the memoranda and submissions of the parties, is prepared to rule upon that appeal.

On July 14, 2025, Kenneth Jason Brookins, who is proceeding *pro se*, filed his Complaint [1] against the Oxford School District, its Board of Trustees, and District Superintendent Bradley Roberson. Brookins alleges that the Defendants' failure to hire him for a teaching position for which he applied was discriminatory in violation of Title VII. On February 4, 2026, Brookins filed a Motion to Amend [20], wherein he sought to amend his Complaint [1] to add a Title VII retaliation claim. The Magistrate Judge entered a Report and Recommendation [34], wherein she recommended that the amendment be permitted. The Defendants timely filed an Objection [43] to that recommendation. Having considered the parties' arguments, along with the applicable authorities, the Court is now prepared to rule.

This litigation stems from Brookins' application for a full-time Biology teacher position with the Oxford School District for the 2023-2024 school year. By way of background, Brookins, a Black man, alleges that he is "a licensed, Class AA, Mississippi educator" who has maintained

a valid teaching license for the past 16 years. [1] at p. 4. He asserts that he sought employment with the Oxford School District multiple times beginning in 2021. After not being selected (or even interviewed) for previous positions for which he applied, Brookins worked as a substitute teacher for the District.

When the District posted a vacancy for a full-time Biology teacher position for the 2023-2024 school year in Spring 2023, Brookins applied. On June 8, 2023, he interviewed but ultimately was not selected for the position. He alleges that "Hayden Hershfelt, a Caucasian male with no prior public-school teaching experience and no teaching license at the time" was hired for the position. *Id*. at p. 5. After filing an EEOC Charge and obtaining a right to sue letter, Brookins filed his Complaint [1] asserting two Title VII claims: (1) race discrimination based upon failure to hire and (2) disparate impact. On September 9, 2025, the Magistrate Judge entered a Case Management Order [12] setting forth numerous deadlines. Relevant here, the Case Management Order [12] set a deadline of October 23, 2025 for amendment of the pleadings.

On February 4, 2026, Brookins filed his Motion to Amend [20], requesting that he be permitted "to amend his complaint to include a retaliation claim under Title VII based on facts that either occurred after the pleading deadline or became evident to Plaintiff only recently while preparing his discovery requests." [20] at p. 2. Brookins attached a proposed Amended Complaint to his Motion [20]. Although lengthy, the Court finds it appropriate to set forth the additional facts alleged in the proposed Amended Complaint pertaining to the retaliation claim:

> 62. Plaintiff engaged in protected activity under Title VII when he filed an EEOC charge against Defendants on December 18, 2023, alleging discriminatory hiring practices, and later when he filed this lawsuit on July 14, 2025, in federal court.
>
> 63. Following the filing of his EEOC charge and subsequent complaint, Plaintiff and his immediate family became the targets of a sustained pattern of retaliatory conduct by

Defendants, including discriminatory and adverse actions directed at his wife and minor children.

64. In January 2024, shortly after Plaintiff filed his EEOC charge, Plaintiff's wife, who was employed by the Oxford School District, began experiencing discrimination from the same school official, Principal Dana Bullard, who had been named in Plaintiff's EEOC complaint.

65. Over the next several months, Plaintiff's wife filed multiple internal grievances and appeals with the Defendants, all of which were denied in a process that lacked transparency, fairness, and appropriate response.

66. On July 9, 2025, shortly after Plaintiff sent a pre-litigation settlement demand letter to the Defendants, the Superintendent sent Plaintiff's wife a threatening and intimidating email that discouraged her from filing further grievances. This message was delivered five days before Plaintiff filed this lawsuit.

67. On July 30, 2025, sixteen days after Plaintiff filed this federal lawsuit, the Oxford School District abruptly terminated Plaintiff's wife's employment without due process or justification.

68. As part of the termination process, Defendants unlawfully accessed and used the confidential education records of Plaintiff's minor children, including A.R.B.'s Section 504 Plan and L.D.B.'s IEP and full psychological evaluation, to support their decision to terminate Plaintiff's wife.

69. These confidential records were included, unredacted, in the "evidence packet" provided to Plaintiff's wife on August 11, 2025, in direct violation of federal student privacy protections under FERPA and with no legitimate educational purpose.

70. When Plaintiff sought accountability and answers regarding the improper access and disclosure of his children's confidential education records, Defendants and their counsel ignored, dismissed, or deflected his concerns.

71. The retaliation continued when a teacher at Oxford Middle School singled out Plaintiff's daughter, A.R.B., in front of her classmates on August 27, 2025, referencing Plaintiff's

prior email to the school principal about his daughter's Section 504 accommodations.

72. Between August 2025 and January 2026, Plaintiff made repeated efforts to engage with the Oxford School District administration about the unauthorized disclosure of his children's records and the failure to implement their disability accommodations. These efforts were ignored or met with dismissive responses.

73. On December 17, 2025, the District's SPED Director, Toni Bell, admitted to Plaintiff that she provided Plaintiff's child's IEP to the Superintendent at this request, and acknowledged that doing so for employment-related purposes did not meet the FERPA standard for a "legitimate educational purpose." She also admitted that the Defendants failed to maintain the mandatory Record of Disclosure log.

74. The actions taken against Plaintiff's wife and children, including wrongful termination, unauthorized access to confidential records, and targeted harassment of a minor child, were intended to punish Plaintiff for engaging in protected activity and to deter him from continuing his legal claims.

75. The retaliatory conduct by Defendants would dissuade a reasonable person from pursuing or continuing protected activity under Title VII.

[20], Ex. 1 at p. 10-12.

Thus, the crux of Brookins' proposed retaliation claim is that after he initiated litigation against the Defendants, they engaged in additional, unwarranted actions toward his family members, including termination of his wife's employment and improperly accessing and utilizing his children's private information. Arguing against Brookins' request to amend, the Defendants pointed out that the request was untimely and asserted that the retaliation claim went beyond the scope of the EEOC Charge and that Brookins lacked standing to pursue a retaliation claim based upon the termination of his wife's employment. But the Magistrate Judge, after walking through

the relevant factors, recommended that the amendment be permitted. The Defendants timely filed an Objection [43], largely reiterating the same reasons raised in their original opposition.

**DISCUSSION**

"The Court must review any objected-to portions of a report and recommendation *de novo*. Such a review means that the Court will consider the record that has been developed before the Magistrate Judge and make its own determination on the basis of that record." *Scott v. Pyles*, 596 F. Supp. 3d 623, 627 (S.D. Miss. 2022) (citing *United States v. Raddatz*, 447 U.S. 667, 675, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980)); *see also Wallace v. Miss.*, 2025 WL 2413057, at *1 n. 1 (S.D. Miss. Aug. 20, 2025). "When a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings." *M.B. v. Landgraf*, 2019 WL 1370848, at *2 (E.D. Tex. Mar. 26, 2019) (quoting *Tex. Indigenous Council v. Simpkins*, 544 F. App'x 418, 420 (5th Cir. 2013)). If the request to amend is made prior to the passing of the deadline in the scheduling order, Rule 15 governs, whereas Rule 16 governs if the request is made after the passage of the deadline. *Id*. (citing *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 868 (5th Cir. 2010); *Tex. Indigenous Council*, 544 F. App'x at 420) (additional citation omitted).

Since Brookins sought leave to amend after the deadline passed, the more stringent Rule 16 standard applies. *Tribal Solutions Grp., LLC v. Valandra*, 2025 WL 350246, at *2 (S.D. Miss. Jan. 30, 2025). "Rule 16(b)(5) provides that a scheduling order 'may be modified only for good cause and with the judge's consent.'" *Id*. (quoting *Hinkle Metals & Supply Co. v. Compton's Appliance, Inc.*, 2012 WL 12965936, at *1 (S.D. Miss. June 21, 2012)). "Good cause showings are evaluated using four factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment;

and (4) the availability of a continuance to cure such prejudice." *Id*. at *4 (quoting *S&W Enter., LLC v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003)). In addition, "[i]t is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999)).

Before walking through these factors, the Court feels compelled to point out Brookins' status as a *pro se* litigant. Although it does not excuse the failure to comply with the general rules of litigation, it seems clear that *some* leniency should be extended to *pro se* litigants. *See*, *e.g.*, *Amos v. Cain*, 2022 WL 610344, at *3 (N.D. Miss. Mar. 1, 2022) ("This Court is cognizant that leniency should be extended to *pro se* litigants . . . However, the Court cannot excuse the *Pro Se* Plaintiffs' failure to comply with the most fundamental requests[.]"); *Calhoun v. Hargrove*, 312 F.3d 730, 733-34 (5th Cir. 2002) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)) ("It is well-established that '*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers.'"). However, the Defendants also emphasize that Brookins holds multiple degrees, including a law degree, which, they contend, militates against extending him leniency. While recognizing that Brookins has some training in the law, he seemingly is not a licensed attorney. The Court will take all of this into account when analyzing the relevant factors.

First, the Court looks to the explanation for the failure to timely move for leave to amend. *Valandra*, 2025 WL 350246 at *4. The timeline is critical in order to fully grapple with this issue. Brookins filed this lawsuit on July 14, 2025. His wife's employment was terminated 16 days later on July 30, 2025. The deadline to amend passed on October 23, 2025. According to Brookins in his Reply [28], on December 12, 2025, he obtained "admissions revealing that [his] wife was terminated before supporting evidence was gathered and that counsel accessed Plaintiff's

children's confidential education records for non-educational purposes[.]" [28] at p. 1. Thus, according to Brookins, despite the fact that his wife's employment was terminated well prior to the amendment deadline, he learned additional information to support his retaliation claim after the deadline's passage. He goes on to allege that "the unauthorized access and use of Plaintiff's minor children's confidential educational records, and additional retaliation as recent as January 13, 2026, either occurred after the October 23, 2025 deadline or were only fully understood in context during Plaintiff's ongoing review of facts in preparation for discovery." [20] at p. 2. He sought leave to amend on February 4, 2026.

In the Objection [43], the Defendants point out the obvious fact that there was a lapse of over 6 months from the time of Brookins' wife's termination (July 30, 2025) to when he sought leave to amend (February 4, 2026). Brookins counters by pointing out that, while the termination occurred in July 2025, it was not until much later that he learned additional facts relating to its retaliatory nature. To some extent, the Court agrees with the Defendants that leave should have been sought sooner. But on the other hand, Brookins, who again, despite having some training in the law, is not a licensed attorney, is entitled to some leniency. And the Court does give some credence to Brookins' representation to the Court that he continued to learn information to support his claim far beyond when his wife's termination occurred. Ultimately, as was articulated in the Report and Recommendation [34], the Court finds this factor to be neutral.

The second inquiry is the importance of the amendment. *Valandra*, 2025 WL 350246 at *4. The Defendants contend that this factor weighs in their favor because the retaliation claim was never presented in Brookins' EEOC Charge and because he lacks statutory standing to bring a Title VII retaliation claim. The Court does not believe the outcome on those points is as obvious as the Defendants portray it to be. While the Defendants *may* ultimately prevail on one or both of

those arguments, the Court finds it more appropriate for the same to be fully briefed and analyzed in the context of a motion to dismiss and/or a motion for summary judgment so that the issues can be fully considered rather than via an abbreviated course of action on a motion to amend. The Court finds this factor weighs slightly in favor of allowing the amendment.

The third and fourth factors—the potential for prejudice and availability of a continuance—can be analyzed together. *Id*. The Defendants argue that, if the amendment is permitted, they would be prejudiced because they did not have a chance to engage in discovery on the retaliation claim because of the late juncture at which Brookins sought leave (and the discovery deadline has now passed). On the other hand, they also argue that reopening discovery and extending the dispositive motions deadline would "essentially restart[] this litigation and improperly broaden[] the case[.]" [43] at p. 7. Thus, in the Defendants' view, if the amendment is allowed, they will be prejudiced regardless.

The Court does not find these arguments persuasive. Although it is true that the Defendants will incur additional costs if the amendment is permitted, the fact that Brookins waited until after the deadline to seek leave to amend does not impact those costs. In other words, if Brookins had sought leave earlier, those costs would have been incurred. Furthermore, the Court finds that a continuance of the trial and reopening discovery *to a limited extent* will allow the Defendants to engage in all steps necessary to defend the claim. Stated differently, nothing prohibits them from seeking dismissal of the claim. The third and fourth factors weigh in favor of allowing the amendment.

Ultimately, taking all of these factors into account, the Court finds that the amendment should be permitted. In reaching this conclusion, the Court has weighed the relevant factors, as well as Brookins' *pro se* status. He will be permitted to file an Amended Complaint. The Court

will continue the current trial setting and reopen discovery for a brief period of time. The scope of that discovery will also be limited to the retaliation claim.

## CONCLUSION

In light of the foregoing, the Report and Recommendation [34] is hereby **ADOPTED IN FULL**. Brookins' Motion to Amend [20] is **GRANTED**. The Clerk of Court is directed to file Brookins' proposed Amended Complaint, which was attached as Exhibit 1 to his Motion [20], on the docket as the Amended Complaint (which will be the operative complaint). In light of this ruling, the Court finds it appropriate to reopen discovery for a limited duration and a limited scope. The new discovery period, which will be set by the Magistrate Judge, will be limited to the retaliation claim. This will in turn necessitate a continuance of the current trial setting. By separate Notice, the Court will reset the trial. The Magistrate Judge will reset all applicable deadlines in accordance with the new trial date. All other pending Motions [46, 48, 53] are hereby **TERMINATED**. The Defendants may renew their request for summary judgment at the time they deem appropriate subsequent to the filing of the Amended Complaint.

SO ORDERED, this the 28th day of September, 2026.

Robert P. Chamberlin

**UNITED STATES DISTRICT JUDGE**